*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
November 21, 2023

v

CARLOS TORRES,

        Defendant-Appellant.

No. 362796
Lenawee Circuit Court
LC No. 2019-019692-FC

Before: O'BRIEN, P.J., and K. F. KELLY and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of one count of first-degree criminal sexual conduct ("CSC I") and three counts of second-degree criminal sexual conduct ("CSC II"). Defendant was sentenced as a fourth-offense habitual offender to 25 to 50 years' imprisonment for the CSC I conviction and to 10 to 15 years' imprisonment for each CSC II conviction. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises from sexual assaults defendant perpetrated against his minor stepdaughter. The first instance of sexual assault occurred when the victim was 11 or 12 years old. During this time, defendant engaged in sexual contact with the victim while she was sleeping when defendant and the victim were alone in the home together on at least 10 occasions. On several occasions, the victim testified she awoke to defendant touching the area "right above" her pants. She also stated that defendant touched her body, masturbated in front of her, attempted to forcibly penetrate her, performed oral sex on her and forced her to do the same.

After the victim's mother and defendant ended their relationship, the victim told her mother about the assaults, and law enforcement was contacted. Defendant was ultimately charged with multiple counts of CSC I and CSC II. Defendant's stepson also made allegations of sexual assault against defendant, which led to defendant being charged with four additional counts of CSC I.

Trial was held over four days. After the victim testified, defendant moved for a directed verdict on two charges of CSC I, which involved penile-vaginal penetration and cunnilingus, which the trial court denied. Defendant was convicted of one count of CSC I, MCL 750.520b(1)(a) (sexual penetration with a

person less than 13 years of age), two counts of CSC II, MCL 750.520c(1)(a) (sexual contact with a person less than 13 years of age), and one count of CSC II, MCL 750.520c(1)(b)(*i*) (sexual contact with a person between 13 and 16 years of age with whom the defendant shares a household). Defendant was acquitted of the remaining two counts of CSC I, which were the subject to defendant's motion for directed verdict. Defendant was also acquitted of all charges relating to the alleged sexual assaults involving his stepson. Defendant was sentenced as noted, and this appeal followed.

## II. STANDARDS OF REVIEW

"To preserve a great-weight claim, a party must move for a new trial in the trial court." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Defendant did not move for a new trial in the trial court and, therefore, has failed to preserve the issue for appeal. See *Cameron*, 291 Mich App at 617. Our review, therefore, "is limited to plain error affecting defendant's substantial rights." *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003). To determine whether reversal is warranted for an unpreserved claim under a plain-error standard of review:

> First, there must have been an error. Second, the error must be plain, meaning clear or obvious. Third, the error must have affected substantial rights . . . . Fourth, the error must have resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity or public reputation of judicial proceedings. [*People v Borgne*, 483 Mich 178, 196-197; 768 NW2d 290 (2009) (quotation marks and citation omitted).]

## III. ANALYSIS

Defendant argues the jury's verdict was against the great weight of the evidence because the evidence preponderates so heavily against the verdict it would be a miscarriage of justice to allow the verdict to stand. We disagree.

"[A]bsent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility for the constitutionally guaranteed jury determination thereof." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998) (quotation marks and citation omitted). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647. "[U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645-646 (quotation marks and citation omitted).

In *Musser*, 259 Mich App at 219, this Court held a defendant "fail[s] to demonstrate a plain error affecting his substantial rights" when the defendant's argument does not "relate to indisputable physical facts, but rather to inconsistencies between the testimony of different witnesses and the evidence presented." (Emphasis omitted.) We reasoned: "Although the complainant's credibility was challenged by the defense, we cannot say that the complainant's testimony was deprived of all probative value or that the jury could not have believed it, or that the testimony contradicted indisputable physical facts or defied physical realities." *Id.*

Defendant's argument that the verdict was against the great weight of the evidence is premised on attacking the victim's credibility. While defendant is able to identify inconsistencies in the victim's preliminary examination testimony and trial testimony, her trial testimony did not directly contradict her

testimony at the preliminary examination but rather provided additional details. The victim testified at trial that she screamed when defendant assaulted her in bed and that defendant masturbated while she was in the shower. Neither of these details were mentioned in her preliminary examination testimony. While inconsistencies between the preliminary examination and trial testimony may have impeached her testimony to some extent, these inconsistencies were relatively minor and did not go to the essential elements of the crimes. Thus, the victim's trial testimony was not "seriously impeached," and the case was not "marked by uncertainties and discrepancies." See *Lemmon*, 456 Mich at 644 (quotation marks and citations omitted).

Defendant also argues that the victim lacked credibility because she lied about the assaults to exact revenge on defendant for taking away her quinceañera. The jury was presented with testimony defendant was a strict stepfather who took away the victim's phone and did not permit her to have a quinceañera. The jury was also presented with testimony the victim had a father-daughter relationship with defendant and that she waited until after her mother and defendant's relationship ended to report the assaults out of fear of splitting her family apart. Given the jury's verdict, it appears the jury rejected defendant's retribution theory, at least in part, which it was entitled to do.

Defendant also argues the jury must have had doubts regarding the victim's credibility because defendant was acquitted of two counts of CSC I involving penile-vaginal penetration and cunnilingus, as well as all counts related to his stepson. We cannot speculate whether the jury acquitted defendant on these counts on the basis of possible doubts concerning the victim's credibility. See *People v Garcia*, 448 Mich 442, 502 n 25; 531 NW2d 683 (1995) ("While it is an appellate court's duty to review jury verdicts, it may not speculate regarding a jury's conclusions."). Moreover, the jury was properly instructed it could accept or reject some or all of a witness's testimony. See *People v Schumacher*, 276 Mich App 165, 180; 740 NW2d 534 (2007). The two acquitted charges of CSC I required proof of cunnilingus and vaginal penetration. That the jury concluded the prosecution did not prove beyond a reasonable doubt that vaginal penetration or cunnilingus occurred does not necessarily shed light into the jury's perception of the victim's credibility. The victim testified that defendant placed his nose "on" her vagina, and she was unsure whether he was able to penetrate her vagina with his penis. This testimony, which tends to support sexual contact but not penetration, is equally reasonable to explain the jury's verdicts.[1]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kirsten Frank Kelly
/s/ Michael J. Kelly

---

[1] Defendant includes in his statement of question presented an assertion that his due-process rights were violated because the verdicts were against the great weight of the evidence. Defendant does not raise a due-process argument in the body of his brief on appeal and fails to cite authority to support the argument that a due-process violation occurred. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Because defendant's cursory argument is abandoned for his failure to provide supporting authority and analysis, we decline to address the argument. See *id*.